UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA ANN TAYLOR,<br><br>  Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>  Defendant. | No.  2:13-cv-2056-EFB<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  The parties' cross-motions for summary judgment are pending.  For the reasons that follow, plaintiff's motion is denied and defendant's motion is granted.

I.   BACKGROUND

Plaintiff filed an application for a period of disability and DIB on November 18, 2008, alleging that she had been disabled since August 9, 2007.  Administrative Record ("AR") 224-228.  Plaintiff's application was denied initially and upon reconsideration.  *Id.* at 136-139, 141-145.  On August 30, 2010, a hearing was held before administrative law judge ("ALJ") Peter F. Belli.  *Id.* at 75-110.  Plaintiff was represented by counsel at the hearing, at which she and a vocational expert ("VE") testified.  *Id.*

1

On December 14, 2010, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i) and 223(d) of the Act. *Id*. at 116-123. Plaintiff's request for review by Appeals Council was granted and on November 4, 2011, the Appeals Council vacated the ALJ's 2010 decision and remanded the matter for further consideration of plaintiff's residual functional capacity ("RFC"). *Id*. at 130-135.

Another hearing was held before the ALJ on April 17, 2012. Plaintiff and a vocational expert provided additional testimony. *Id*. at 43-74. The ALJ issued a new decision on July 18, 2012, again finding that plaintiff was not disabled under sections 216(i) and 223(d) of the Act.[1] *Id.* at 12-35. The ALJ made the following specific findings:

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since August 9, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: bilateral carpal tunnel syndrome (CTS) status post surgery, chemical asthma/reactive airway disease (RAD), cervical degenerative disc disease (DDD), chronic neck pain, and obesity (20 CFR 404.1520(c)).

   * * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

   * * *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasionally climb stairs, walk on uneven terrain and slopes, no crawling or climbing ladders/ropes/scaffolds, occasionally stoop, crouch and kneel, frequently flex and extend the waist, frequently grasp and finger, no exposure to concentrated gases or temperature extremes, occasional exposure to humidity and extreme wetness, and no working at unprotected heights or around unprotected hazardous machinery.

   * * *

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

   * * *

7. The claimant was born on September 23, 1957 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. The claimant has acquired work skills from past relevant work (20 CFR 404.1568).

   * * *

10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a) and 404.1568(d)).

    * * *

   11. The claimant has not been under a disability, as defined in the Social Security Act, from August 9, 2007, through the date of this decision (20 CFR 404.1520(g)).

*Id.* at 14-35.

Plaintiff again requested Appeals Council review which was denied on August 28, 2013, leaving the ALJ's July 18, 2012 decision as the final decision of the Commissioner. *Id.* at 1-5.

II. <u>LEGAL STANDARDS</u>

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. <u>ANALYSIS</u>

Plaintiff argues that the ALJ erred by (1) improperly discrediting the opinion of plaintiff's treating physician, examining physician, and chiropractor; and (2) finding plaintiff's testimony not credible without providing clear and convincing reasons. ECF No. 13-1 at 22-33.

/////

A. The ALJ Properly Weighed the Medical Opinion Evidence of Record

Plaintiff challenges the ALJ's rejection of the opinions of treating physician Dr. Musselman, examining physician Dr. Dhawan, and chiropractor Dr. Crume.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester*, 81 F.3d at 834. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining medical professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

The record in this case includes numerous opinions from various physicians. On July 22, 2010, treating physician Dr. Richard Musselman completed a bilateral manual dexterity impairment questionnaire. AR 1716-1721. He indicated that plaintiff had bilateral carpal tunnel syndrome residuals, with a fair prognosis. *Id.* at 1716. Dr. Musselman indicated that plaintiff had reduced grip strength, tenderness, loss of fine coordination, and experienced pain, fatigue, and weakness. *Id.* at 1716-1717. He opined that plaintiff could lift and carry 5 to 10 pounds occasionally, and that her pain would increase significantly with repetitive reaching, handling, or fingering. He also opined that plaintiff had marked limitations in grasping, turning, and twisting

5

objects; using fingers/hands for fine manipulations; and using arms for reaching, including overhead. He also found that plaintiff would need to take 15 to 20 minute breaks every hour; would be absent from work more than three times a month; would need to avoid temperature extremes; and would be unable to push or pull. *Id*. at 1720.

On March 22, 2011, Dr. Musselman completed a pulmonary questionnaire. *Id*. at 1747-1753. He diagnosed plaintiff with chemical asthma and reactive airway disease. *Id*. at 1747-1748. Clinical findings included shortness of breath; chest tightness; wheezing; episodic acute asthma, bronchitis, and pneumonia; fatigue; coughing; air hunger; hoarseness; and palpitations. *Id*. at 1748. Dr. Musselman indicated that plaintiff's precipitating factors included upper respiratory infection, allergens, exercise, emotional stress, irritants, cold air or change in weather, smoke, and perfume. *Id*. at 1749. It was his opinion that as a result of plaintiff's lung condition, she could sit for 8 hours in a workday, stand and walk up to 1 hour in a workday, lift up to 5 pounds frequently and up to 50 pounds occasionally. He further opined that plaintiff's lung condition would require her to take 1 to 2 unscheduled breaks a day, and cause her to miss more than 3 days a month. *Id*. at 1752. Plaintiff would also need to avoid odors, humidity, fumes, dust, perfumes, gases, cigarette smoke, solvents and cleaners, chemicals, and soldering fluxes. *Id*. at 1752-1753. Dr. Musselman further stated that plaintiff does much better at higher elevations, away from the dense air and smoke in Redding, California, but that she always chokes up and gets worse when she has to travel to doctor's appointments or do any shopping. *Id*. at 1723-1724.

On February 23, 2009, plaintiff underwent a complete internal medicine evaluation, which was conducted by examining physician Dr. Joseph Garfinkel. *Id*. at 1247-1251. Dr. Garfinkel diagnosed plaintiff with history of chemically-induced asthma; bilateral carpal tunnel syndrome; chronic neck pain, most likely osteoarthritis; hypertension, well controlled on oral medications; diabetes mellitus type II; and history of polycystic ovary syndrome. *Id*. at 1251. He opined that plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk 6 hours in an 8-hour workday, sit 6 hours in an 8-hour workday, but should avoid exposure to chemicals, noxious fumes, smoke, or other pulmonary irritants. *Id*. at 1251. Dr. Garfinkel did not assess any manipulative limitations. *Id*.

In September 2009, plaintiff underwent another comprehensive internal medicine evaluation, this time conducted by Dr. Michael Kinnison, M.D. *Id*. at 1410-1414. Dr. Kinnison diagnosed plaintiff with neck pain, etiology undetermined; shortness of breath (although normal on exam); leg pain, etiology undetermined; bilateral carpal tunnel syndrome; and obesity. *Id*. at 1413. He opined that plaintiff could stand or walk 6 hours in an 8-hour workday; sit unlimited in an 8-hour workday; lift or carry 20 pounds occasionally and 10 pounds frequently, primarily using her left hand. *Id*. at 1413-1414. He also opined that plaintiff could occasionally kneel or crawl, but was not impaired in climbing, balancing, stooping, and crouching. *Id*. at 1414. Dr. Kinnison also found that plaintiff was limited in reaching and handling due to recent surgery, which could resolve in 9 to 12 months, and that she should not work around chemicals, dust, fumes, or gases due to her pulmonic symptoms. *Id*.

Plaintiff was also evaluated by examining physician Dr. Deepak Dhawan, M.D., at the request of his attorney. *Id*. at 1771-1774. Dr. Dhawan diagnosed plaintiff with bilateral carpal tunnel syndrome status post surgery, chronic degenerative joint disease of the cervical spine, cervical radiculopathy, asthma, and obesity. *Id*. at 1773. He opined that plaintiff could sit and stand/walk 5 to 6 hours in an 8-hour workday; occasionally lift and carry up to 5 pounds; never push or pull; and would need to avoid temperature extremes. *Id*. at 1780, 1783. He further opined that plaintiff had marked limitations in performing gross manipulations with her left hand; moderate limitations in gross manipulation with her right hand; and moderate limitations in performing find manipulations with both hands. *Id*. at 1780-1781. It was also his opinion that plaintiff's symptoms would frequently interfere with attention and concentration, which would limit her to only low stress work. *Id*. at 1782.

The record also contains two physical RFC assessment completed by non-examining physicians Dr. J. Becker and Dr. F. Kalmar. *Id*. at 1254-1258, 1429-1433. Dr. Becker opined that plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; push and pull without limitation; occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds;

/////

and occasionally balance, stoop, kneel, crouch, and crawl. *Id*. at 1255-1256. Dr. Becker also opined that plaintiff had no manipulative or environmental limitations. *Id*. at 1256-1257.

Dr. Kalmar opined that plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; push and pull without limitation; occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. *Id*. at 1430-1431. However, Dr. Kalmar opined plaintiff was limited to frequent handling and fingering, and should avoid concentrated exposure to extreme cold, vibrations, fumes, odors, dusts, gases, and hazards. *Id*. at 1431-1432.

The record also contains a spinal impairment questionnaire completed by plaintiff's chiropractor, Dr. Brian Crume. *Id*. at 1739-1745. Dr. Crume diagnosed plaintiff with cervical sprain/strain and lumbar segmental dysfunction, which was based on limited cervical and lumbar ranges of motion, tenderness, spasms, and upper extremity muscle weakness. *Id*. at 1739-1740. He opined that plaintiff could sit 2 hours in an 8-hour workday, stand/walk 1 hour in an 8-hour workday, lift up to 10 pounds frequently and 20 pounds occasionally, and carry up to 5 pounds frequently and 20 pounds occasionally. *Id*. at 1742-1743. He also opined that plaintiff would need to take 10 minute breaks every 1 to 2 hours and would likely be absent from work two to three times a month.

Also included in the record are opinions from physicians that examined plaintiff in relation to her workers' compensation claim. Plaintiff underwent an orthopedic evaluation on December 15, 2009, which was performed by Dr. Larry Magnussen. AR 1701-1712. Plaintiff complained of numbness, tingling, and pain in her hands and fingers. *Id*. at 1703. Dr. Magnussen diagnosed plaintiff with bilateral carpal tunnel syndrome, status post bilateral carpal tunnel release. *Id*. at 1710. He opined that plaintiff was not capable of performing her past work as a biller.

Plaintiff was also examined by Dr. Revels Cayton, who is board certified in internal medicine and pulmonary disease, in connection with her workers' compensation claim. *Id*. at 766-775. He assessed plaintiff with a 20 percent whole person impairment and opined that

plaintiff was not excluded from the labor market and could perform work that doesn't require exposure to noxious fumes or gases. *Id.* at 1871.

Plaintiff first argues that the ALJ erred by failing to state the particular weight he gave to Dr. Musselman and Dhawan's opinion, and instead provided "one general statement . . . that he was granting to all medical source opinions . . . 'moderate, but not controlling or significant weight.'"[2]  ECF No. 13-1 at 26.  Although this statement is not very helpful in evaluating the weight the ALJ gave to the various opinions in the record, the ALJ does add that he gave greater weight to the opinions given by state agency non-examining physicians which would include Drs. Becker and Kalmar), consultative examining physicians (which includes Drs. Garfinkel and Kinnison), and agreed medical evaluators (which includes Drs. Cayton and Magnussen) than the opinions given by plaintiff's treating physicians and chiropractors.  Nonetheless, plaintiff contends that the ALJ failed to give sufficient reasons for reaching this finding.  Part of the difficulty in evaluating the ALJ's treatment of the specific medical opinion evidence derives from the ALJ's failure to identify each physician by name.  The court addresses below each medical opinion.

### 1. Dr. Musselman

The ALJ stated that he gave greater weight to the opinions from examining and non-examining medical sources than he accorded to Dr. Musselman's opinion because their opinions were more consistent with clinical findings during the course of the consultative examinations as well as diagnostic studies. AR 33.  As indicated above, both Dr. Garfinkel and Dr. Kinnison examined plaintiff.  Based on their independent examinations, both physicians opined that plaintiff could walk and stand 6 hours in an 8-hour workday, sit at least 6 hours in an 8-hour

---

[2] The ALJ's decision states:

> Taking all the evidence into consideration, particularly the CE medical opinions and clinical findings, agreed medical evaluations disability impairment opinions, and PT functional evaluations, the undersigned accorded moderate, but not controlling or significant weight to those medical opinions.

AR 32.

9

workday, but should avoid exposures to pulmonary irritants. Although Dr. Kinnison found manipulative limitations while Dr. Garfinkel did not, Dr. Kinnison stated that such limitations were due to recent surgery and could resolve in 9 to 12 months. Their opinions constitute substantial evidence supporting the ALJ's finding that contrary to Dr. Musselman's opinion, plaintiff could perform a modified range of light work. *See Tonapetyan*, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that an examining physician's opinion constitutes substantial evidence because it relies on independent examination of the claimant); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict").

The opinions from non-examining physicians Drs. Becker and Kalmar were largely consistent with the opinions of Drs. Garfinkel and Kinnison, and also support the ALJ's decision that plaintiff could perform modified light work. *See* 20 C.F.R. §§ 404.1527(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); 20 C.F.R. § 404.1513(c) (findings by state agency physicians constitute proper evidence from non-examining sources); SSR 96–6p ("State agency medical . . . consultants are highly qualified physicians . . . who are experts in the evaluation of the medical issues in disability claims."); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("opinions of nontreating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record").

The ALJ stated that less weight was given to Dr. Musselman's opinion due to inconsistencies in the treatment record. AR 33. Although Dr. Musselman found that plaintiff could not work due to her lung impairment, several treatment records do not support the severity of impairment opined by Dr. Musselman. In November 2008 plaintiff reported wheezing when she traveled to the valley, but breathed better in the mountains. AR 385. Examination revealed free speech, ability to breathe, no coughing, and clear lungs. *Id*. Progress notes from January

/////

2009 indicate some wheezing, but plaintiff had a 96 percent oxygen saturation.[3] Further, as noted by the ALJ, plaintiff's oxygen saturation levels between 2008 and 2010 were never lower than 94 percent. *Id*. at 25. In March 2010, plaintiff reported being "quite a bit better since she began Combivent," and that Celebrex reduced her inflammation. *Id*. at 1688. Progress notes from May 2010 indicate that plaintiff was put on a Combivent inhaler, which seemed to work well. *Id*. at 1680. In March 2011, although plaintiff reported she continues to cough and had a little wheezing, she reported that she was doing well on Combivent. *Id*. at 1818. The ALJ also noted that there was no record of her respiratory issue requiring hospitalization or emergency room care. Furthermore, although Dr. Musselman found that plaintiff had severe manipulative limitations due to her carpel tunnel syndrome, post-surgery records indicate that while plaintiff "still has a degree of carpal tunnel syndrome in both of the hands," it was described as "very minimal." *Id*. at 1691.

In sum, the ALJ identified and permissibly relied on the inconsistencies in Dr. Musselman's opinion and the treatment record and did not err by giving reduced weight to his opinion. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (finding that the ALJ properly rejected a treating physician's opinion that was extreme in light of the findings made by the doctor); 20 C.F.R. §§ 404.1527(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").

Accordingly, the ALJ gave specific and legitimate reasons for rejecting Dr. Musselman's opinion.

### 2. Dr. Dhawan

Plaintiff also contends that the ALJ failed to give legally sufficient reasons for rejecting Dr. Dhawan's opinion. In the instant case, Dr. Dhawan was just one of several examining physician that examined plaintiff and provided an opinion on his functional limitations. As the opinions from the examining physicians of record are entitled to equal weight, the ALJ was

---

[3] According to the Mayo Clinic, normal levels of oxygen saturation are between 95 to 100 percent. Under 90 percent is considered low. *Hypoxemia* (low blood oxygen), Mayo Clinic (last checked March 30, 2015), http://www.mayoclinic.org/symptoms/hypoxemia/basics/definition/sym-20050930.

11

1 permitted to resolve the conflict between these opinions without a detailed explanation. *See*
2 *Sheffer v. Barnhart*, 45 F. App'x 644, 645 (9th Cir. 2002) ("Because the ALJ was entitled to
3 resolve this evidentiary conflict between conflicting opinions of equal weight, he did not need to
4 provide specific and legitimate reasons for rejecting [two treating physicians' opinions].");
5 *Watson v. Barnhart*, 2003 WL 21838474, *4 (N.D. Cal. Aug.1, 2003) (finding that ALJ decision
6 was consistent with the opinion of one of the plaintiff's treating physicians and, therefore, the ALJ
7 "did not need to articulate specific and legitimate reasons for disregarding [another treating
8 physician's] opinion."); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where
9 the evidence is susceptible to more than one rational interpretation, one of which supports the
10 ALJ's decision, the ALJ's conclusion must be upheld.").

11     Accordingly, the ALJ did not err in adopting the opinions of the examining physicians
12 over the opinion given by Dr. Dhawan.

13         3.  Dr. Crume

14     Plaintiff also contends that the ALJ erred in rejecting the opinion from plaintiff's treating
15 chiropractor, Dr. Crume.  In addressing Dr. Crume's opinion, the ALJ stated that "evidence from
16 a chiropractor is evidence from other sources, not an acceptable medical source and, as such,
17 cannot be given the type of weight accorded to acceptable medical sources."  AR 33.  The
18 applicable regulations provide that a chiropractor, although a treating medical source, is viewed
19 as an "other source" and not as an "acceptable medical source."  SSR 06–3p; 20 C.F.R.
20 §§ 404.1513(d).  In rejecting testimony from an "other source," the ALJ need only give germane
21 reasons for doing so.  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir.2012).  The ALJ may
22 consider the mere fact that an opinion is not from an "acceptable medical source" in giving it little
23 weight.  See SSR 06–3p, 2006 WL 2329939, 2006 SSR LEXIS 5; 20 C.F.R. § 404.1527(c).
24 Here, the ALJ discounted Dr. Crume's opinion in favor of opinions from examining and non-
25 examining physicians because he was not an acceptable medical source.  AR 33.  This was an
26 appropriate, indeed germane reason for rejecting his opinion.
27 /////
28 /////

Accordingly, the ALJ did not err in weighing the medical evidence of record.[4]

B. <u>The ALJ Properly Rejected Plaintiff's Subjective Complaints and Credibility</u>

Plaintiff next argues that the ALJ erred by failing to give sufficient reasons for discrediting plaintiff's testimony. ECF No. 13-1 at 30-33.

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of impairment, the ALJ may then consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *See id.* at 345-347. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen*, 80 F.3d at 1284. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. *See Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan*, 169 F.3d at 599.

/////

---

[4] Plaintiff also argues that "the ALJ's articulation of Ms. Taylor's RFC is inherently problematic due to what seems most likely to be a typographical error. He finds her capable of frequently flex[ing] and extend[ing] the waist." ECF No. 13-1 at 23. It is clear from the record that the ALJ indented to write "wrist" instead of "waist." Plaintiff nevertheless argues that remand is appropriate because "the ALJ's intentions cannot be ascertained by the face of his decision alone." *Id.* at 24. Not surprisingly, no authority is cited to support this contention.

13

Plaintiff testified that she has breathing problems due to her chemical asthma. AR 52. She experiences shortness of breath, which causes her to have "oxygen attacks." *Id*. at 52, 56-57. She stated that severe attacks start with shortness of breath, and lead to palpitations, breaking out into sweat, confusion, and eventually "falling asleep." *Id*. at 57. Plaintiff reported being able to wash dishes for 10 minutes and mop and sweep for 5 minutes, before needing a break. *Id*. at 59-61. She further stated that her breathing problems are triggered by chemicals or the weather, and that humidity from the shower can cause her problems. *Id*. at 61. She testified that she experiences pain in her neck, wrists, and low back, for which she takes Ibuprofen. *Id*. at 56, 62. Plaintiff also testified that she had surgery on her hands for her carpal tunnel syndrome, but "the surgery failed." *Id*. at 62. She alleges that she experiences pain in her hands when she washes dishes, cooks, and occasionally when she does laundry. *Id*. at 95-96.

The ALJ gave multiple reasons for discounting plaintiff's credibility. First, the ALJ found that plaintiff had only received conservative treatment. AR 32. Evidence of conservative treatment provides a sufficient basis for discount a claimant's testimony regarding severity of an impairment. *See Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). The ALJ observed that "there is no evidence of any ER treatment or hospitalizations, physical therapy for her neck or back pain, no referral to dieticians for her obesity, is not using any assistive device to ambulate, no evidence of treatment for her alleged passing out, and no evidence of treatment at a pain clinic or pain injections for her neck pain." AR 32.

The ALJ's credibility finding is supported by substantial evidence in the record. There are several examples. Plaintiff testified that when she has a severe oxygen attack she will experience shortness of breath, which sometimes leads to her "falling asleep." AR 57. Despite her testimony that severe oxygen attacks cause her to pass out, there is no evidence that she has sought treatment at an emergency room or had been hospitalized or received some form of urgent care for such an episode. Given the severity of plaintiff's allegations, the ALJ permissibly found that plaintiff's allegation was inconsistent with receiving conservative treatment from her physician.

/////

*See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that the ALJ is entitled to make logical inferences from the evidence).

Plaintiff also alleges that she is disabled due to pain in her neck, hands, and back. AR 56, 62. The ALJ noted that plaintiff did not attend physical therapy for her neck or back pain, and there is no indication that she received treatment at a pain clinic or that she received pain injections. AR 32. Indeed, plaintiff testified at the hearing that she only takes Ibuprofen for her pain symptoms. *Id*. at 62. Plaintiff argues, however, that the fact that she was not referred for physical therapy or pain management was a judgment call "appropriately made by her treating physician." ECF No. 13-1. While this may be true, the fact that plaintiff's treating physicians did not find that further treatment was warranted suggests that her impairments are not as severe as alleged. Accordingly, the ALJ permissibly found that plaintiff's allegations were not supported by her conservative treatment.

Further, the ALJ also found that plaintiff's allegations were not fully supported by the medical evidence of record. While an ALJ may not rely solely on a lack of objective medical evidence to support an adverse credibility finding, it is a relevant consideration in assessing credibility. *See Burch v. Barnhart*, 400 F.3d 676,681 (9th Cir. 2005); *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). The ALJ noted that a February 2005 MRI of the cervical spine showed disc protrusion at C5-6 and C7, but there was no moderate, marked or severe cord compression. AR 30; 381-82. An August 2005 cervical spine MRI showed minimal disc bulges, moderate disc height reduction at C7-T1. *Id* at 387-388. It was noted that current examination was similar to results obtained in 2002. *Id*. at 388. An electrodiagnostic examination from January 2008 showed moderate carpel tunnel syndrome with no evidence of cervical radiculopathy and no evidence of upper extremity entrapment neuropathy. *Id*. at 1131-34.

The ALJ also noted that plaintiff's allegations of debilitating breathing issues were not fully supported by the medical record. Medical notes reflect that in November 2008, plaintiff had free speech, ability to breathe, no coughing, and clear lungs. AR 385. While treatment records indicate some coughing and wheezing, her lungs were clear with normal sounds and she experienced improvement on her medication. *Id*. at 1465, 1680, 1688, 1818. Furthermore, as

15

noted above, the medical record consistently found that plaintiff's oxygen saturation levels were normal. Accordingly, the ALJ logically concluded that the medical evidence of record did not support the severity of plaintiff's allegations.

Thus, the ALJ gave specific and legitimate reasons for discounting plaintiff's credibility.

IV. CONCLUSION

The ALJ applied the proper legal standard and supported his decision with substantial evidence. Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: March 31, 2015.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE